JENKINS ET AL v. SHIELDS ET AL.

ADMINISTRATOR: LIABILITY UPON BOND: COMPROMISE OF CLAIM.

*Appeal from Henry District Court.*

WEDNESDAY, MARCH 20.

THE plaintiffs are the heirs of Evan Jenkins, who departed this life in 1859. On the 11th day of January, 1860, the defendant Shields was by the county court of Henry county appointed administrator of the estate of said Evan Jenkins, and this action is brought to recover of him and his co-defendants as sureties on his official bond. The claim is that he fraudulently, negligently, and so carelessly managed the estate that the plaintiffs were greatly damaged. That certain notes and evidences of debt came into his hands as such administrator, for which he failed to account. The defendants deny all fraud and mismanagement, and claim to have fully accounted for all property that came into the hands of the administrator.

There was a trial to the court, judgment for the defendants, and plaintiffs appeal.

*H. & R. Ambler*, for appellants.

*L. G. Palmer* and *Woolson & Babb*, for appellee.

SEEVERS, J.—I. Appellees discuss the question somewhat, whether this is an equitable action as insisted by appellants. But we do not understand them to insist the action is not triable *de novo*. If the action be of an equitable character, then it is triable anew in this court. In view of the manner of trial below, and because no such objection is specifically made, we hold the appellants are entitled to a trial *de novo*.

II. It is insisted that certain Levan-Housel notes which went into the hands of the administrator have not been properly accounted for. The plaintiffs claim there were seven notes secured by mortgage on eighty acres of land; six of them being for $200 each, and the other for $300. This is admitted by the defendants with the exception that they claim one of the $200 notes had been paid to the intestate except about $40, which was still due thereon at the time the notes came into the hands of the administrator. The plaintiffs also claim there was another note amounting to $128.25, executed by Levan & Housel, on which there was near a year's interest at ten per cent which went into the administrator's hands. This is denied by the defendants.

In January, 1863, the administrator presented to the county court of Henry county a petition in which he represented there were at that time due and unpaid five of said notes of $200 each, except that $25 had been paid on one of them, and one note of $300, and he asked authority to settle and compromise them on the payment of " $522.62 in cash and $300 in the spring, and a note on J. M. Housel for $174.78." The cause assigned for this compromise was that the mortgage security had depreciated in value. The defendants claim that the county court granted authority to the administrator to compromise the Levan-Housel notes in the foregoing manner, that he did so and accounted for all the money received thereunder.

That the administrator believed he was so authorized by the county court

to settle and adjust the said notes, we are forced to believe from his testimony and that of Warwick and the then county judge. No such order, however, was entered of record. It appears very conclusively the business of the county court was not conducted with as much system as, considering its importance, there should have been. On the contrary, at that time, owing to sickness in the family of the county judge, laxity prevailed. Orders were made and business transacted on the street, memoranda thereof being made by the judge on slips of paper, from which entries were afterward made of record by the clerk, and in this instance the entry being out of the usual course a blank was left by the clerk to be filled up by, or under the eye of, the judge, but it never was done.

That the judge in fact made the order, and that the administrator in good faith acted on that supposition and thereunder we have no doubt. In representing the mortgaged property had greatly depreciated the administrator did not act in bad faith. About the same number of apparently intelligent farmers have as witnesses for each side given their estimate of the value of the mortgaged premises at the time the compromise was made. According to the testimony of those on the side of the defendants there had been a great depreciation of real estate and the premises would not have brought at forced sale more than was realized by the compromise.

The plaintiffs' witnesses on the contrary are of opinion the premises were of greater value, such at least is the effect of their testimony.

Looking at the matter in the light of to-day, it might be well concluded the compromise was not the very best that could in all probability have been done. But in the absence of bad faith, under the circumstances of this case, we cannot hold that defendants are liable.

It must be remembered that the administrator made what he believed without doubt was his final report and that distribution of the estate was based thereon and made about four years before this action was commenced. This lapse of time renders it extremely difficult for the administrator to show by an accurate calculation that he has received and accounted for every dollar of assets that came into his hands. There is no reason shown why in the exercise of ordinary diligence the action could not have been sooner brought.

On the plaintiffs' theory there was due on the Levan-Housel notes at the time the compromise was made about $2,000. This is on the supposition the administrator was bound to account for the $128.25 note, and the whole of the $200 note, instead of about $40, as claimed by defendants. Conceding this to be true, under the compromise the estate was to receive about half of that amount. In fact more than that amount was reported and accounted for. Outside of the reports made to the County Court by the administrator, the weight of the testimony in our opinion is very decidedly in favor of the defendants' theory in this respect.

Levan has no recollection of there having been any such a note as $123.25, and he testifies that one of the $200 notes was mostly paid. He is therefore under the impression that there was not exceeding $100 thrown off in the compromise.

There are other matters which are claimed by the parties to support their respective theories. Having, however, referred to the testimony more than is our custom in the discussion of matters of fact, we cannot undertake the task of doing so to any greater extent.

We ground our ruling on the fact that there was no bad faith on the part of the administrator; that in all he did he was governed by what he believed to be right and for the best interests of the estate; that he accounted for all the money received by him, and that his action in regard to the compromise was done under the order and advice of the county court, and that final distribution had been made four years before this action was brought, without any showing or excuse why it was not sooner instituted.

III. Two other matters are complained of by the appellants. There was a note against McDowell which came into the hands of the administrator as a part of the assets. The administrator testifies that he understood nothing was due thereon and therefore he did not bring suit. There is nothing to contradict this statement; we, therefore, must find it to be true, and hold the administrator did right in not subjecting the estate to the payment of costs.

Certain notes against one Harrison came into the administrator's hands. He made collections thereon from time to time and reported the same to the court, and final distribution thereof, as we have said, was made four years before this action was commenced. There is not a shadow of testimony tending to show the administrator did not fully account for every dollar of money he received. It is barely possible a mistake in the calculation of interest may have been made. Even this must be regarded as doubtful, and nothing else is claimed.

Without entering into a discussion of the reasons, it is sufficient to say we are not satisfied, under the circumstances of this case, that plaintiffs are entitled to recover anything by reason of the administrator's failure to properly account for the Harrison notes.

AFFIRMED.